### IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Leland Howard Grim, Jr.,**  )<br>  )<br>**Plaintiff,**  )<br>  )<br>v.  )<br>  )<br>**Commissioner, Social Security Admin.,**  )<br>  )<br>**Defendant.**  )<br>_____  ) | Case No. 2:15-cv-3698-TMC-MGB<br><br><br><br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Leland Howard Grim, Jr., through counsel, seeks judicial review of an unfavorable final administrative decision denying benefits on his application for a period of disability and disability benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the assigned Magistrate Judge for review pursuant to Local Civil Rule 73.02(B)(2)(a) and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, administrative record, and applicable authority, the Magistrate Judge recommends that the Commissioner's final decision should be **<u>affirmed</u>**, based on the following proposed findings of fact and conclusions of law:

### I. Procedural History

After two unsuccessful attempts to obtain disability benefits, Plaintiff filed a third application for DIB benefits on July 26, 2012, alleging disability as of April 15, 2011 due to "post laminectomy syndrome, PTSD, depression, chronic back pain from post laminectomy syndrome stenosis, arthritis, seizures, panic disorder, and problems with memory, learning." (AR 28, 190-91, 208). The application was denied initially and on reconsideration. (AR 98-103). Upon Plaintiff's request, Administrative Law Judge Edward T. Morriss ("ALJ") scheduled a hearing. Multiple consulting examinations (AR 310-336, Exs. 4F-8F, mental and physical) and multiple

reviews by state agency physicians (AR 71-72, 74-75, 91-93, 112-13, mental and physical) were ordered. Plaintiff, who was represented by counsel, testified at the hearing on December 3, 2014. (AR 43-64). On February 19, 2015, the ALJ issued a decision denying benefits (AR 28-37). Plaintiff then obtained and submitted a post-decision psychologist report regarding three visits in 2015. (AR 15). The Appeals Council noted that the ALJ had decided the case through September 30, 2014 (the date last insured) and that Plaintiff's "new information" concerned a later time period and did not affect the decision regarding the relevant time period. (AR 2). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision is the Commissioner's final decision (AR 1-4). See 20 C.F.R. § 404.984(a).

## II. Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.*; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability

determinations"). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## III. <u>Relevant Statutory Law</u>

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are disabled within the meaning of the statute. 42 U.S.C. § 423(a). The claimant "bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). Under the SSA, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations set forth a five-step sequential process that considers a claimant's age, education, and work experience in addition to the claimant's medical condition. 20 C.F.R. §§ 404.1520(a). To be entitled to benefits, the claimant "(1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and persuasion through the fourth step. If the claimant reaches step five, the burden shifts to the government to provide evidence that other work exists in significant numbers in the national economy that the claimant can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). The ALJ decided the present case at the fourth step of the sequential process.

## IV. Background

The relevant facts have been extensively set forth in the ALJ's decision (and in the parties' briefs) and are summarized as follows: Plaintiff was born February 22, 1975 (a "younger" person) and was age 36 on his alleged disability onset date of April 14, 2011. (AR 46, 248). He lives with his parents, has a driver's license, communicates in English, is literate, has the equivalent of a high school education ("GED"), and has technical training in wireless communications and technical support/customer service. (AR 32, 46, 207-209, 262). He has had a variety of jobs (AR 48, 210), [1] with past relevant work experience as a collection agent. (AR 36, Finding 6). According to Plaintiff, he worked in 2009-2010 at an IQor call center making collection calls for Direct TV, and then for Tele-Partners, Ltd., doing phone work from home where he could sit, stand, and adjust position at will (AR 49-50).

For activities of daily living, Plaintiff reports that he plays video games ("X-box"), watches television, reads, shops, prepares simple meals, washes dishes, help with laundry, and occasionally starts outdoor lawn equipment for his mother. (AR 31-32, 56, 219, 334). He is able to walk without assistance, drive a car, grocery shop, use a computer, dress himself, take care of his own hygiene, count change, use a bank account, sit through a whole movie, and do some household chores. (AR 18, 31-32, 55, 58-60, 215, 218-220).[2] He indicates his hobbies are reading, video games, television, fishing, hunting, and watching MMA boxing at his friend's house. (AR 31-32, 221).[3] He indicates he socializes with friends and gets along fine with authority figures. (AR 223).

---

[1] According to Plaintiff, he has worked as a route supervisor/swing driver for Krispy Kreme, a "radio frequency engineer" for Sun Com, a cashier for Hess, and a technical support coordinator for Verizon. (AR 49-51).

[2] Plaintiff completed a function report indicating that he is unable to stand/sit for "long periods," but testified he can sit through a whole movie and that he sits about 4-5 hours in an 8-hour day. (AR 60, 215). He testified that he can stand/walk 2-3 hours in an 8-hour day. (AR 61).

[3] Plaintiff listed these hobbies, but indicates he has not hunted the last two seasons. The ALJ noted that Plaintiff does not hunt or fish anymore. (AR 33).

Plaintiff has filed four workers' compensation claims since 1993, but he has been able to return to work after each claim (AR 32, 47-48, indicating claims in 1993, 1998, 2000, and 2004). For example, Plaintiff underwent lumbar spinal fusion and laminectomy surgeries in 1997 (AR 405). After some time for recuperation, Plaintiff returned to work (AR 32, 200). In 2004, Plaintiff was injured in a work-related motor vehicle accident, which was the basis for his 2004 claim. He had a closed head injury, concussion, and back injury. (AR 32, 48). Afterwards, Plaintiff saw several doctors, including Dr. Thomas Privett, M.D. (neurologist); Dr. Russel Kitch, M.D. (ENT specialist); Dr. J. Robert Alexander, Jr., M.D. (orthopedist); and Dr. L. Randolph Waid, Ph.D. (psychologist) (AR 33, 413-17). In 2006, these doctors provided brief letters opining that Plaintiff had work-related limitations (such as vertigo and balance problems) that precluded him from working at that time (AR 414-17). In the following years, 2007-2008, there are no medical treatment records. Moreover, contrary to the 2006 opinions of his physicians, Plaintiff was able to, and did in fact, return to work in 2008 and worked until 2011. (AR 200). Plaintiff indicates he quit his job, allegedly due to alleged back pain, headaches, panic attacks, and jaw pain (AR 32, 48-49).

With regard to physical problems, Plaintiff's medical treatment during the relevant time period (2011-2014) was routine and conservative, consisting largely of medication refills. Several MRIs and X-rays reflect largely "mild" findings, and treatment notes consistently reflect that although Plaintiff has some reduced lumbar range of motion ("ROM"), he walked normally and had no muscular weakness, no joint abnormality, normal reflexes, no muscular atrophy, and no neurological deficits. The ALJ also noted that multiple physicians have indicated they suspect Plaintiff is abusing narcotics (AR 33-34 noting "history of narcotic dependence;" AR 281 treating

physician's note indicating "I am concerned he has a drug addiction problem;" AR 294 treatment notes indicating "high risk of addiction;" AR 333 describing patient as "narcotic dependent").[4]

As for alleged mental impairments, Plaintiff's primary care physicians prescribed medication, which admittedly helped any mental symptoms. Plaintiff acknowledges that he has not been treated by any mental health professional during the relevant time period (2011-2014), and in fact, had not had any care from a mental health professional since 2004/2005. Moreover, Plaintiff's physicians have not recommended or referred him to any mental treatment (AR 301), and mental status evaluations during the relevant time period reflect "unremarkable" findings. On November 21, 2012, state agency psychologist Judith Von, Ph.D., reviewed the evidence and indicated that any mental impairment was "non-severe" (AR 71-72). On April 26, 2013, psychologist Lisa Clausen, Ph.D. affirmed such opinion as written (AR 91-93).

The ALJ discussed Plaintiff's treatment with Dr. David Baggett, M.D., for alleged lower back pain. (AR 33, citing Ex. 1F). In 2009-2010, Dr. Baggett noted that Plaintiff had a "high risk" of addiction, but nonetheless continued to prescribe pain medications for Plaintiff. (AR 33, 290-94). His examination and MRI of Plaintiff's lumbar spine (dated 6/29/2010) yielded "unremarkable" physical findings with no significant stenosis, only mild arthropathy, and "minimal" degenerative disc disease. (AR 338, 411 "lumbar spine is normally aligned").

The ALJ also discussed Plaintiff's treatment with Dr. Leslie Pelzer, M.D. for alleged low back pain (AR 33, citing Ex. 3F; AR 340-41). Plaintiff signed a controlled substance contract agreeing not to obtain controlled substances from other physicians. (*Id.*). Plaintiff indicated he was

---

[4] In addition to doctors' concerns about narcotic dependence, Plaintiff acknowledged in 2013 that he had used marijuana on a daily basis since age 18, and had smoked cigarettes for over 20 years. (AR 35, 56, 325). The Contract with America Advancement Act of 1996, Pub. L. No. 104-121, § 105(a)(1)(C), 110 Stat. 852, amended the definition of "disability" under Title II of the SSA to bar benefits for any individual whose disability is based on alcoholism or drug addiction. 42 U.S.C. 423(d)(2)(C). Title II now states: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Id.

taking Dilaudid, Klonopin, and Celexa, but that he had no side effects from such medications. (*Id*.). As the ALJ noted, Dr. Pelzer indicated in February 2012 that Plaintiff was doing "very well" with medication and that Plaintiff's anxiety was well controlled with medication. (AR 33, 346).

The ALJ observed that Plaintiff returned to Dr. Baggett for pain medication. (AR 34, 282-287). In October 2012, Dr. Baggett indicated he suspected that Plaintiff had a drug addiction problem, that he did not trust Plaintiff, and that he told Plaintiff he no longer felt comfortable treating him (AR 281). In October 2012, Dr. Baggett completed a check-box form for Plaintiff.[5] Dr. Baggett (who is not a psychiatrist) listed a diagnosis of "depression/anxiety," but indicated that no psychiatric treatment was recommended (AR 301). Dr. Baggett indicated Plaintiff's memory, attention, and concentration were "good" and that Plaintiff was oriented to time, person, place, and situation, but circled "obvious" for unspecified "work-related limitation." (*Id*.).

The ALJ indicated that Dr. Pelzer completed a similar check-box form for Plaintiff, indicating that any mental issues caused only "slight" work-related limitations and that no psychiatric treatment was recommended (AR 34, citing Ex. 3F; AR 307). Dr. Peltzer indicated Plaintiff's memory, attention, and concentration were "adequate," that Plaintiff was oriented to time, person, place, and situation, and that he was capable of managing his own funds. (*Id*.). Nonetheless, Dr. Pelzer submitted a short paragraph opining that Plaintiff was unable to work due to chronic pain (AR 309, letter dated 10/5/2012). In June-August of 2013, Plaintiff continued to obtain pain medication from Dr. Pelzer. (AR 350-55).

---

[5] Courts have recognized the "limited probative value" of such check-the-box forms, especially when they lack well-supported explanatory notes. *See, e.g., McGlothlen v. Astrue*, 2012 WL 3647411, *6 (E.D.N.C.); *Shelton v. Colvin*, 2015 WL 1276903, *13 fn.6 (W.D.Va.); *Leonard v. Astrue*, 2012 WL 4404508, *4 (W.D.Va.); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight"); *Foushee v. Colvin*, 2014 WL 6831766, *3 (M.D.N.C.) (referring to it as "weak evidence").

On several occasions in 2012 and 2013, Plaintiff went to emergency rooms (i.e., MUSC and Roper St. Francis) seeking medication for alleged back pain (AR 378, 382). He obtained narcotic medication and was discharged (AR 379, 383, listing medications such as oxycodone, Norco, hydromorphone). Lumbar X-rays on April 3, 2013 showed normal vertebral body heights and alignment, "minimal" disc space narrowing at L1-2, "mild" facet arthropathy, and due to his prior lumbar fusion, "moderate to marked" narrowing at L5-S1. (AR 35, citing Ex. 7F; AR 410).

During 2012-2013, Plaintiff underwent multiple consulting examinations. (AR 34-35). Plaintiff saw Gene Sausser, Ph.D. in November of 2012 (AR 34, 311-14). Plaintiff primarily complained of back pain, although he also claimed memory issues and PTSD. (AR 311-12). Dr. Sausser noted that Plaintiff's daily activities were intact and that Plaintiff indicated he enjoyed socializing with friends. (*Id*.). On examination, Plaintiff was found only "mildly anxious" with flat affect, but had normal speech, no difficulties in general motor activity, average intelligence, appropriate memory and thought processing, good reasoning, good judgment, good insight, and good impulse control. (*Id*.). Plaintiff indicated that he was able to concentrate well on tasks. (*Id*.).

Plaintiff underwent a second psychological consulting examination in April of 2013 (AR 35, citing Ex. 8F). Francis Fishburne, Ph.D., examined Plaintiff and indicated that he was "narcotic dependent." Dr. Fishburne noted prior arrests for auto theft, attempted burglary, and DUI, and observed that Plaintiff had not been treated by a mental health professional since 2004/2005 (AR 333). Dr. Fishburne found Plaintiff had normal behavior, speech, memory, thought processes, intelligence, judgment, impulse control, and insight. (AR 35, 335). She ruled out PTSD and rated Plaintiff's GAF score at 80, indicating only slight impairment in social and occupational symptoms or functioning (AR 336).

The ALJ also discussed Plaintiff's two physical consulting examinations with Dr. Adebola Rojugbokan, M.D. (AR 34-35, on 11/21/2012; AR 316-31, on 4/3/2013). At the first examination, Dr. Rojugbokan found markedly reduced lumbar ROM due to the fusion surgery, but observed that Plaintiff had a supple neck with full ROM, no neurological abnormalities, good ROM in all extremities, could walk heel-to-toe normally, and was in no acute distress (AR 317-19). He observed that Plaintiff was alert and oriented x3, and that Plaintiff denied any vertigo, headaches, muscle/joint stiffness, arthritis, or psychiatric problems except for some depression. (*Id*.). At the second examination, Dr. Rojugbokan indicated his comprehensive examination of Plaintiff was "essentially normal except for the chronic pain that the patient complained about." (AR 325). He noted some tenderness and reduced lumbar ROM, with disc space narrowing at L5-S1, but found no articulating bone misalignment, no muscle atrophy, normal cervical spine; 5/5 grip strength; normal fine and gross manipulation; normal reflexes; and no neurological deficits (AR 326-28). He again observed that Plaintiff walked with a normal gait. (*Id*.). Plaintiff acknowledged that he could perform fine and gross movement, and has normal ability to perform activities that involve "reaching, pushing, grasping, and using the fingers." (AR 325).

In November 2013, Plaintiff went to Dr. Tony Owens, M.D. for alleged back pain (AR 35, citing Ex. 20F). Upon examination, Dr. Owens found normal strength, normal mental status, and no muscle atrophy, but noted an antalgic gait, lumbar tenderness, and restricted lumbar ROM. (*Id*.). Dr. Owens started Plaintiff on Norco, although he noted that Plaintiff already had some 100 mg Fentanyl patches that he was using. (*Id*.). At a return visit in December 2013, Dr. Owens again found normal strength, normal mental status, and no muscle atrophy. This time, he observed that Plaintiff walked with a normal gait. (AR 403 "non-antalgic"). Plaintiff continued to see Dr. Owens for medication refills and Fentanyl patches through July 2014 (AR 391-403).

While Plaintiff was seeing Dr. Owen, he also went in May 2014 to an emergency room seeking medication for alleged back pain. (AR 35, citing Ex. 14F; AR 386). Examination reflected "non-antalgic gait" and "normal cognition and orientation." In June 2014, a CT scan of his lumbar spine, a found "mild" curvature, vertebral height preserved, no acute compression fracture, "mild" disc protrusion or scar, no significant foreminal narrowing or central stenosis, and only "mild" arthritis change. (AR 408).

## V.  The ALJ's Decision

Based on the record as a whole, the ALJ determined that Plaintiff's back problem, i.e. "degenerative disc disease status post fusion" qualified as "severe" for purposes of the SSA. (AR 30, Finding 3). The ALJ found that alleged depression did not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and thus, was non-severe. The ALJ specifically considered and rated all four functional areas set forth in the regulations for evaluating mental disorders. (AR 30-31 finding three areas to be "mild" and that claimant did not meet the fourth area because he had experienced no episodes of decompensation of extended duration). The ALJ cited § 12.00C of the Listings and determined that Plaintiff did not have "an impairment or combination of impairments" that met or medically equaled the severity of any Listing. (*Id*., Finding 4). See 20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(d), 1525, 1526.

The ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 33, Finding 5). The ALJ then considered Plaintiff's functional abilities and determined that he retained the RFC to perform light work with certain restrictions. (AR 31-36). In light of Plaintiff's back impairment and possible medication side effects, the ALJ limited Plaintiff to work that involved "never" climbing ladders, rope, or scaffolds, and only "occasional" climbing of ramps or stairs. (AR 31). He limited Plaintiff

to only "occasional" stooping, kneeling, crouching, and crawling, and frequently balancing. (*Id*.). Based on Plaintiff's age, education, work history, RFC, and the hearing testimony, the ALJ determined that Plaintiff could still perform his past relevant work. On February 19, 2015, the ALJ issued a decision, finding that Plaintiff was not disabled from the alleged onset date (April 15, 2011) through September 30, 2014 (date last insured). (AR 37, Finding 7).

## VI.  Discussion

### 1. Whether the ALJ Considered Plaintiff's Impairments in Combination when Determining RFC

Plaintiff argues that the ALJ failed to consider the combination of his "impairments as they impact the totality of an individual's mental and physical capacity for performing appropriate work-related duties over a sustained period of time and within a given work environment." (DE# 12 at 10-11). Specifically, Plaintiff argues that the ALJ "failed to consider the impact that chronic pain … has upon depression." (*Id*. at 13). The Commissioner responds that the ALJ adequately considered the impairments in combination when determining Plaintiff's RFC. (DE# 13 at 11-15).

Disability may result from impairments, which taken separately might not be disabling, but when taken together, render a claimant unable to work. 42 U.S.C. § 423(b)(2)(B) (2004). An ALJ must evaluate the "combined effect" of a claimant's impairments, *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989), and make "particularized findings" on the combination of impairments, *Hines v. Bowen*, 872 F.2d 56, 59 (1989).

Review of the ALJ's decision reflects that the ALJ sufficiently considered Plaintiff's impairments in combination when determining RFC and that the ALJ made sufficiently particularized findings. The ALJ summarized the medical evidence regarding Plaintiff's alleged

impairments (mental and physical)[6] and expressly indicated that he had considered their combined effect. (AR 32-36). *See Reid v. Comm'r*, 769 F.3d 861, 865 (4th Cir. 2014) (absent evidence to the contrary, the court should accept the ALJ's assertion that he considered the combined effect of the impairments); *and see e.g., Robinson v. Astrue*, Case No. 2:10–cv–185–DCN, 2011 WL 4368396, *5 (D.S.C. Sept.19, 2011) ("The structure of the ALJ's analysis of plaintiff's conditions indicates that the ALJ did, in fact, consider the conditions in combination).

The ALJ indicated he had "considered all symptoms" (AR 31). He specifically discussed evidence regarding both the "severe" physical impairment (degenerative disc disease) and the "non-severe" mental impairment (depression), and considered any resulting functional limitations. For example, the ALJ discussed the findings of treating physician Dr. Peltzer at periodic visits in 2012, indicating that despite Plaintiff's alleged back issues, Plaintiff reported "good mood," that his anxiety was "well controlled on Klonopin," and that he did "very well" on medication. (AR 33).[7] The ALJ specifically discussed the opinion of consulting (mental) examiner Dr. Fishburne who had noted "pain disorder with both psychological factors and general medical condition." (AR 35). The ALJ noted that Dr. Fishburne had assessed a current GAF score of 80 and indicated that Plaintiff's "attention, concentration, and short term memory" were all "within normal limits." (*Id*.). The ALJ also discussed the opinion of consulting examiner Dr. Gene Sausser, who opined that although Plaintiff had occasional issues with pain and anxiety/depression, he could still work (AR

---

[6] An ALJ need not mention every single piece of evidence in the record. *Reid v. Comm'r,* 769 F.3d 861, 865 (4th Cir. 2014) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence"); *Gilbert v. Colvin*, Case No. 2:14–cv-981–MGL–MGB, 2015 WL 5009225 (August 19, 2015) (same).

[7] *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *see e.g., McCullough v. Colvin*, Case No. 1:12–208–MGL-SVH, 2013 WL 2285919, *5 (D.S.C. May 23, 2013) (the ALJ "properly considered Plaintiff's improvement while on medication"); *Austin v. Colvin*, Case No. 0:11–cv–02768–DCN–PJG, 2013 WL 1181952, *7 fn. 4 (D.S.C. March 21, 2013) (the ALJ properly observed that Plaintiff "functioned normally" when compliant with prescribed medication for mental symptoms).

34, citing Ex. 4F). The ALJ discussed Plaintiff's activities of daily living (including an active social life and ability to drive a car), and concluded that the degree of Plaintiff's subjective complaints about "pain and anxiety," and any resulting functional limitations, were not fully credible (AR 36). The ALJ pointed out that the consulting examiners (Drs. Sausser and Fishburne) had both opined that Plaintiff's social activities, activities of daily living, and ability to concentrate were all "intact." (*Id*.).

Although Plaintiff suggests that the ALJ should have more fully considered the "overall zombifying effects" of Plaintiff's medications, such as Celexa for Depression and Klonopin for anxiety (DE# 12 at 14), Plaintiff admitted in 2012 that he was having no side effects from such medications (AR 340). Moreover, the ALJ's RFC accommodated possible medication side effects, such as vertigo, balance, or drowsiness, by limiting Plaintiff to "never" climbing ladders, ropes, or scaffolds and only "occasionally" climbing ramps and stairs. (AR 31, Finding 5). The ALJ reasonably accounted for Plaintiff's credibly established functional limitations by limiting him to a modified range of light work with various restrictions. *See Paris v. Colvin*, 2014 WL 534057, *12 (W.D.Va. Feb. 10, 2014) ("the ALJ accounted for the cumulative impact of impairments as supported in the record"). Although Plaintiff alleges that his impairments were not sufficiently considered "in combination," the Commissioner correctly asserts that the ALJ's overall analysis shows that the ALJ adequately considered Plaintiff's impairments in combination. (DE# 13 at 11).

"Courts in this district have found the ALJ's discussion and analysis adequate where a reading of the decision as a whole makes clear that the ALJ considered the combination of impairments." *Bell v. Colvin,* Case No. 4:11–CV–2114–TER, 2013 WL 1282063, *5 (D.S.C. March 25, 2013); *and see Brown v. Astrue*, Case No. 10-cv-1584-RBH-PJG, 2012 WL 3716792, *6 (D.S.C. Aug. 28, 2012) (when considering whether ALJ properly considered combined effects

of impairments, the decision must be read as a whole), citing *Green v. Chater*, 64 F.3d 657, 1995 WL 478032, *3 (4th Cir. 1995). The ALJ's analysis reflects sufficient consideration of the combined effects of Plaintiff's impairments. *See, e.g., Allen v. Colvin*, Case No. 4:12–cv–03540–DCN-TER, 2014 WL 1159039, *3 (D.S.C. March 20, 2014) (holding that ALJ's overall discussion was sufficient to show that he considered the claimant's impairments in combination).[8]

## 2. Whether Substantial Evidence Supports the ALJ's Weighing of the Treating Physician Opinion Evidence

Next, Plaintiff complains that the ALJ "assigned little weight" to the 2006 opinions of Plaintiff's treating physicians regarding his ability to work after the 2004 automobile accident. (DE# 12 at 16). The Commissioner responds that the ALJ properly discounted these opinions, because they "pre-dated Plaintiff's alleged onset date of disability by approximately five years." (DE# 13 at 15-16). The Commissioner correctly notes that such letters were submitted for Plaintiff's 2004 worker's compensation claim, and that "Social Security and workers' compensation require different tests for disability." (*Id.* at 16, n.1).

When evaluating medical opinions, an ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Dunn v. Colvin*, 607 F.App'x 264, 2015 WL 3451568 (4th Cir. 2015) (citing *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005); SSR 96–2p; 20 C.F.R. §§ 404.1527, 416.927. Generally, the more the medical source presents relevant evidence to support an opinion, and the better that the physician explains it, the more weight such opinion

---

[8] Plaintiff has not shown how a lengthier analysis by the ALJ regarding Plaintiff's alleged "pain and depression" would have resulted in a more restrictive RFC or a different outcome. In such circumstances, courts have repeatedly found that remand is not warranted. *See e.g., Turner v. Colvin*, 2015 WL 502082, *11 (M.D.N.C. Feb. 5, 2015) (holding that remand was not warranted on such basis), *adoptd by* 2015 WL 12564210 (M.D.N.C. Mar. 6, 2015).

is given. See 20 C.F.R. § 404.1527(d)(3) (1998). The more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *Id*. § 404.1527(d)(4). An ALJ need not always give a treating opinion controlling weight. *Hunter*, 993 F.2d at 35. "If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Boyd v. Colvin*, Case No. 0:13–cv–00638–TLW-PJG, 2014 WL 4097924, *5 (D.S.C Aug. 18, 2014).

The ALJ observed that after Plaintiff's 2004 accident, Plaintiff saw Drs. Waid, Alexander, Kitch, and Privett in 2005 and 2006. (AR 33). Plaintiff had filed a worker's compensation claim, and these doctors submitted brief letters indicating their opinion that Plaintiff could not work at that time. The ALJ gave good reasons for giving these opinions little weight. The ALJ aptly observed that "this evidence is approximately five years removed from claimants alleged onset date of April 15, 2011." (*Id*.). Significantly, the ALJ observed that Plaintiff "went back to work after the accident" and worked from 2008 until 2011. (AR 32, 200). Given that Plaintiff returned to work 2008-2011, the 2006 opinions were not probative of Plaintiff's alleged inability to work in the time period 2011-2014. If an opinion "is inconsistent with other substantial evidence" (such as returning to work full-time), it should be accorded significantly less weight. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ appropriately gave the 2006 opinions little weight and stated good reasons for doing so.[9]

The Commissioner points out that the 2006 opinions, which are short and rather conclusory, are not accompanied by any contemporaneous treatment records. (DE# 13 at 17, n.2). For SSA purposes, a treating source's opinion, like all medical opinions, must be both well-

---

[9] It is noted that although Plaintiff testified that Dr. Alexander had restricted him from climbing ladders and scaffolding, the Dr. Alexander's 2006 opinion does not mention this. (AR 415). In any event, the ALJ did in fact restrict Plaintiff from climbing ladders and scaffolding. (AR 59).

supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d)(2)-(4). Moreover, to the extent the 2006 opinions concern the ultimate issue of disability, opinions by a physician on the ultimate issue of whether a Plaintiff is disabled within the meaning of the SSA never receive controlling weight because such decision is reserve to the Commissioner. 20 C.F.R. § 404.1527(e).

Plaintiff also briefly challenges the weight assigned by the ALJ to Dr. Pelzer's 2012 statement that Plaintiff was "unable to sustain meaningful employment." (AR 34, citing 3F). As already discussed, such decision is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Moreover, the ALJ pointed out that Dr. Pelzer had relied heavily on Plaintiff's own subjective statements, which the ALJ found less than fully credible. (AR 36). The Commissioner points out that Dr. Pelzer's statement was not well supported, given her unremarkable" examination findings and her own notes indicating that Plaintiff was doing "very well" on medication and that Plaintiff had denied any medication side-effects. (DE# 13 at 17; AR 33, 340-41). *See Martise v. Astrue*, 641 F.3d 909, 926 (8th Cir. 2011) (treating physician's opinion is properly discounted when it is inconsistent with treatment notes and other evidence).

Although Plaintiff complains that the ALJ relied only on the consulting examiners instead of the 2006 opinions of Plaintiff's treating physicians (DE# 12 at 18), this is not accurate. The ALJ did not rely "only" on the consulting examiners. The ALJ gave "significant" weight to the medical notes of treating physician Dr. Baggett, who had treated Plaintiff various times in 2011-2012 for pain management. (AR 36). The ALJ found that Dr. Baggett's treatment notes showed that Plaintiff's condition was generally stable and that pain management "was at goal with medication." (AR 33-36, citing Ex. 1F). Plaintiff testified that such medication helped. (AR 54). The ALJ also gave "considerable" weight to the opinions of consulting examiners Drs. Fishburne and Sausser,

who examined Plaintiff and found that his social abilities, activities of daily living, and ability to concentrate were all grossly intact. (AR 36).

The ALJ also gave "significant" weight to the opinions of the state agency physicians, who had reviewed Plaintiff's medical records and provided RFC assessments. On December 5, 2012, Dr. Isabella McCall, M.D., opined that Plaintiff could lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently and sit, stand, or walk about six hours in an eight-hour day; frequently balance; occasionally kneel, crouch, stoop, crawl, and climb ramps or stairs, but never climb ladders, ropes, or scaffolds (AR 74-75). She indicated that Plaintiff had no manipulative, visual, or communicative limitations (*Id*.). In April 2013, Dr. Cleve Hutson, M.D. affirmed such opinion as written (AR 112-13). The ALJ indicated that such assessments were consistent with the medical evidence as a whole. Plaintiff does not challenge the ALJ's reliance on such evidence.

In sum, after considering the record as a whole, the ALJ provided good reasons for discounting the 2006 opinions. The ALJ provided appropriate reasons for relying on the notes of treating physician Dr. Baggett, the opinions of several consulting examiners, and the opinions of multiple state agency physicians. The ALJ's decision is supported by substantial evidence.

### 3. <u>Whether the ALJ's Credibility Finding is Supported by Substantial Evidence</u>

Plaintiff challenges the ALJ's credibility analysis and contends that the ALJ should not have discounted his subjective complaints. Plaintiff complains that the ALJ's credibility finding is "insufficiently" supported. (DE# 12 at 19-22). The Commissioner responds that the ALJ provided sufficient reasons for finding Plaintiff's allegations of symptoms of disabling severity to be less than fully credible.

If the ALJ finds a claimant's subjective statements to be less than fully credible, the ALJ must provide specific reasons based on the evidence. Relevant factors may include: the person's

daily activities; the location, duration, frequency, and intensity of the individual's symptoms; factors that precipitate and aggravate the symptoms; any medication taken to alleviate pain or symptoms; treatment and other measures used to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). An ALJ must consider the extent to which a Plaintiff's self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a); and see SSR 16-3p (evaluating symptoms).

The ALJ discussed the Plaintiff's subjective complaints and appropriately considered them in light of the medical opinions, objective medical findings, hearing testimony, activities of daily living, and other evidence. After reviewing the record as a whole, the ALJ found that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 33). This was a proper determination by the ALJ. *See Owen v. Astrue*, 551 F.3d 792, 800 n. 3 (4th Cir. 2008); *Myers v. Comm'r*, 456 F. App'x 230, 232 (4th Cir. 2011); *Hutchinson v. Astrue*, 2012 WL 1267887, *8 (M.D.N.C. April 16, 2013) (observing that the issue is not whether Plaintiff has problems, but rather, "the issue is whether the ALJ considered the record as a whole and properly determined that the extent and limiting effects" were not as great as he claimed).

The ALJ explained that the treatment notes "fail to indicate the level of dysfunction alleged by the claimant." (AR 36). As the Commissioner points out (DE# 13 at 19), the ALJ observed that Plaintiff had not sought treatment with a mental health professional, spine specialist, neurosurgeon, or physical therapist during the relevant period, and that physical examinations had consistently shown no muscular weakness, no sensory loss, no joint abnormality, normal reflexes, no muscular

atrophy, and no neurological deficits (AR 33-36). While an ALJ must consider a plaintiff's subjective complaints, it is explicitly within the ALJ's discretion to weigh such complaints against the evidence as a whole and to discount them. 20 C.F.R. § 404.1529; *Craig*, 76 F.3d at 595.

The ALJ explained that Plaintiff's sporadic work history prior to his alleged onset date undermined his credibility, because it suggested he had stopped working for reasons other than impairment. (AR 33-36). The ALJ discussed Plaintiff's ability to perform a wide range of daily activities. (AR 33-36). See 20 C.F.R. § 404.1529(c)(3)(i) (the Commissioner will consider a claimant's daily activities when assessing credibility); 20 C.F.R. § 416.929(c)(3). Such evidence supports the ALJ's finding that Plaintiff's functional limitations were not as severe as alleged. *See Gross*, 785 F.2d at 1166 (extent of Plaintiff's daily activities supported ALJ's finding that the Plaintiff's alleged impairments were not as severe as claimed); *Johnson*, 434 F.3d at 658 (same).

The ALJ discussed Plaintiff's mental treatment, which was conservative in nature. The ALJ pointed out that Plaintiff had never required psychiatric hospitalization and took medication which admittedly helped him. Under the regulations, a person's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. See 20 C.F.R. § 416.929(c)(3), 404.1529(c)(3). Plaintiff's treatment consisted primarily of prescription refills. Plaintiff did not undergo any regular psychiatric care, and no such care was recommended by his treating physicians. It is well-settled that an ALJ may appropriately consider the conservative nature of treatment in determining credibility. *See, e.g., Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005) (ALJ properly considered the "routine and conservative" nature of Plaintiff's treatment in determining credibility); *Smith v. Colvin*, 756 F.3d 621, 626 (8th Cir. 2014) (same); *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009) (same). Moreover, the ALJ had the opportunity to observe the Plaintiff's demeanor at the hearing, and the ALJ's observations

concerning Plaintiff's credibility are given great weight. *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984). "It is the province of the [ALJ], and not the courts, to make credibility determinations." *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994). Review of the ALJ's reflects that the ALJ gave sufficient reasons to support the credibility finding and that such decision is supported by substantial evidence.

Plaintiff's argument amounts to an invitation to re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. A reviewing court may not do so. Judicial review of the Commissioner's decision is limited to determining whether the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id.*; *Campbell v. Colvin*, 581 F.App'x 310, 310-11 (4th Cir. 2014) ("where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, [courts] defer to the Commissioner's decision"). Here, the ALJ weighed all the information in the record as a whole and appropriately concluded that the Plaintiff's allegations of totally disabling symptoms were not fully credible. The ALJ articulated sufficient and appropriate factors in making the credibility determination. Such finding is supported by substantial evidence.

Accordingly, the Magistrate Judge recommends that the Commissioner's final decision is supported by substantial evidence and should be **AFFIRMED**.

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 26, 2017
Charleston, South Carolina

Plaintiff's attention is directed to the following **important notice**: